Yes. Counsel for Appellant, please proceed. Good morning, Your Honor. Good morning. Good morning. May it please the Court, my name is Kevin Abagoff, partner of Hughes, Hubbard & Reed, and I'm here today on behalf of my client, Imperial Pacific International, in its appeal from the District Court's grant of a mechanics lien and corresponding money judgment against IPI. I'd like to reserve, with the Court's permission, three minutes of my time for rebuttal. All right. Thank you. On June 24, 2019, IPI and U.S.A. Fanter entered into a fixed-fee contract, pursuant to which U.S.A. Fanter would perform civil and structural works as part of IPI's efforts to lay the groundwork for landscaping and related products with respect to its casino hotel in Saipan. As the District Court found, ultimately, IPI refused to pay the invoices submitted by U.S.A. Fanter because IPI believed that U.S.A. Fanter was overcharging for its work with respect to Zone 1 of the project, which to that point had been a substantial focus of U.S.A. Fanter's efforts. Counsel, we know the facts of the case. You have limited time, so why don't you get to the issues? Thank you, Your Honor. I believe the District Court's order is properly reversed for two sets of reasons. One relates to the rejection of IPI's proffered witnesses, and the second relates to the District Court's interpretation of the contract between IPI and U.S.A. Fanter. IPI believes that this Court could reverse on either of these grounds, which I'll review in turn. Beginning with the rejection of the witnesses. First, IPI believes that the District Court abused its discretion, both in the manner in which it determined to reject the testimony of IPI's proffered witnesses and with respect to the substance of its findings. Moreover, having rejected IPI's only two witnesses, the error was clearly outcome-determinative. IPI was left without any basis to rebut the percentage of completion tendered by U.S.A. Fanter, and the error, therefore, can in no way be considered harmless. Counsel, what's your understanding of the basis for the District Court's exclusion of the witnesses? What's your understanding of why they were excluded? The District Court first deferred any ruling on the foundational lay witness pending submission of the expert witness by IPI, and then the expert witness was rejected without the benefit of being able to provide full substantive live testimony, which we believe was an error, but was rejected for the District Court's determination that they were neither their testimony would not be reliable or relevant. Why was that an abuse of discretion if the District Court determined the testimony would not be helpful in deciding the case? How is that an abuse of discretion? Your Honor, I think it's an abuse of discretion in two ways. The first, I believe, focusing on the Ninth Circuit case in Flores, although it's not alone, I believe that the court was obliged, whereas in this case the witness was clearly qualified, to allow the witness to provide, this is the expert witness, live testimony, and for the court to then determine at the conclusion of that live testimony whether the witness was reliable or not. And, in fact, that becomes all the more accentuated on the particular facts of this case, where that's precisely how the District Court treated the expert witness of U.S.A. Fanta. In that case, the expert testified fully, completely, and at length, and then the District Court, at the conclusion of that, actually rejected portions of the testimony because they weren't based, in the District Court's views, on findings related to a substance that that expert could testify to. That is, the particular measurements. Sorry, Your Honor. Counsel, I was just going to say, but doesn't the District Court have the option of exercising a gatekeeping function to determine whether or not the expert testimony should come in? Your Honor, I believe that the precedent is clear, and I believe, resting on sound grounds, that the District Court, in the context of a bench trial, really has, the gatekeeper function really has no relevance. And I think that's precisely what the cases say. I think U.S. v. Flores calls it largely irrelevant in the context of a bench trial, and I believe there's a sound reason for that. Judges are not going to be fooled. They're not going to be overawed, as juries might, by experts and what they purport to be expert on. Rather, they're fully capable of hearing live testimony, subject to cross-examination, and then weighing it, giving it no weight, a lot of weight, or even, at the conclusion of the testimony, determining to reject it entirely. Counsel, can I ask a question? Apart from the gatekeeper aspect, if the expert is not offering testimony that is probative of an issue, a material issue in the case, the District Court can reject that testimony, right? Of course, Your Honor. I completely agree with Your Honor. Okay. And, you know, in this case— Well, no, let me ask my follow-up question, and then you can let me have it. In this case, I thought that the expert was going to testify on the basis of the amount of work done. And the contract said that it was to take into account not just how much materials had been used, but the amount of equipment and installation necessary to complete and a bunch of other things. And the expert wasn't going to testify with respect to those things. And my understanding was that that's why the District Court rejected it, or that that was the basis for that. And if the expert wasn't going to testify as to what the contract said was the measure, then wasn't that properly rejected? So I think that goes more to reliability than relevance, but I'll address each. You know, there was a single issue in this case. It was a fixed-fee contract, as the Court knows. And the only issue at the time was what was the percentage of completion achieved by USA Fanter at the time that they terminated the contract. The question of relevance, I think, is easily dealt with because the expert was going to testify and give his view as to the percentage of completion. So I think it's clearly relevant. As to reliability, which I think Your Honor's question goes more to, I think a careful look at the proffer testimony and the expert report that was submitted to the Court, and I believe is in the record in this Court, shows that what IPI's expert prepared to do is look at actual measurements, which a lay witness was prepared to testify to, taken on the ground at the site, look at the quantities of concrete, rebar, other relevant formworks, other relevant measures, look at the plans, and then he had created and submitted to the Court a reconstruction using a 3D program, as sometimes you do when you go to Rome or Italy and you flip the cellophane pages and you see what the ancient Roman works look like now that they're produced to ruins. Similarly, this 3D program created imaging to show what everything would have looked like had been completed and demonstrated within that what had actually been done, and on that basis was prepared to testify what the percentage of completion was. Counsel, could we move on to a different issue on the representation point, that whether or not Wong was the representative for IPI. If Wong was the representative and approved the statement of the 41.1% completion, would that bind your client? So, obviously, as the Court knows, we take issue with the characterization of Mr. Wong as a representative. Understood, understood, but I wanted you to answer the question I asked you. If the Court properly designated Wong as the representative, would his approval of the 41.1% completion bind your company? So, I don't believe that it would. Why not? I believe that looking at the Court's own judgment, I think it quotes USA Fanter's expert, which says that using custom, that the representative would bind IPI, remembering that in this particular contract, there was no measure for percentage of completion, no milestones, no formula. So, the District Court looked to the expert of USA Fanter and said, applying custom, a representative in the field will typically conduct their own independent evaluation and then meet with the other expert in the field or the other representative in the field and come to some consensus view. There's two issues here. One, there's absolutely no evidence in the record that Mr. Wong, whatever you might call him, representative or a field manager, conducted any kind of independent examination. So, by the Court's own test, it would have failed. But second, I believe that whatever application this resort to custom might have had in the context of consensual, in-the-field discussions and negotiations, I don't believe it has any relevance to a litigated matter. And in fact, if you look at the Court's opinion when it looked at the mechanics lien, it specifically said that USA Fanter would be entitled to a mechanics lien for the work performed, not for the work that parties may have agreed to perform, but for the work actually performed. And here, I believe that resort, unfortunately, to experts to determine what was actually done was the proper pathway to determine what the actual percentage of completion was, whether or not Mr. Wong was the representative of IPI, which, as the Court knows, we can test. Do you have anything further? I will. I'll reserve the balance of my time for rebuttal with the Court's permission. Of course. Thank you. Ms. Riley? Good morning, Your Honors. Thank you, and may it please the Court. My name is Erica Riley, here on behalf of the appellee, USA Fanter. I'll briefly respond to my colleagues' remarks and make a few additional points that support affirmance of the District Court's judgment granting USA Fanter the mechanics lien against IPI in the amount of $2 million. Mr. Abacoff, could you mute your feed, please? I do hear an echo. Yes, I am muted, Your Honor. I will do it again. Because we hear you. Kwame, could you mute Mr. Abacoff? I see that he is muted. Let's see where that audio is coming from. One moment, please. Ms. Riley, can you give me one sentence, please? Yes. My name is Erica Riley. I am here on behalf of the appellee, USA Fanter. I see that he is muted. Let's see where that audio is coming from. One moment, please. Yeah, we are getting audio back. One moment. Yes. My name is Erica Riley. I am here on behalf of the appellee, USA Fanter. It sounds like somebody on the call. Ms. Riley, do you happen to have the stream open somewhere? Yeah, we are getting audio back. I don't think so. Let me just make sure I close everything out. I'm not hearing it back anymore. Judge, does it sound okay to you? Yes. Thank you, Kwame. Thank you so much. Thank you, Your Honor. The four-day bench trial before Chief Judge Ramona Mangalona involved the sole issue, as we know, of determining the proper percentage of work completed by USA Fanter under this lump sum contract with IPI to provide landscape development and improvements. That contract, as Your Honor pointed out previously, which was drafted by IPI, defines work as, quote, the material, equipment, and installation, end quote, necessary to complete the project. So project work was not just those materials, but also equipment and installation. That installation would presumably be the labor involved for the project. And IPI's definition of work under the contract is entirely consistent with lump sum contracts, and there's no dispute that this is a lump sum contract, where you have one price, one figure, that covers all of the work involved. If there are fluctuations in material costs, if there are fluctuations in the difficulty in proceeding with the project, in increased labor costs, those difficulties, those changes, are irrelevant to the ultimate cost under the contract because the lump sum covers all of those contingencies. And we have IPI's 30B-6 witness, Mr. Zhu, expressly acknowledging that this contract was a lump sum contract. So we have a lump sum contract. Counsel, you have limited time. We understand the facts. So could you get to the issue of the district court's exclusion of the experts? Yes, and if you'll indulge me, I'll start it from a slightly different perspective, which is there is no dispute in this record that both USA Fanter and IPI had engineers on site at the project every day. That was Mr. Santos for USA Fanter. That was Mr. Wong for IPI. IPI's 30B-6 witness, Mr. Zhu, confirms that Mr. Wong was the IPI representative that was there on site every day. Those two individuals conferred every day about the progress of the project, conferred ultimately about the percentage of work completed on the project, that 41.1%. And you then have the email exchanges in the record, that's a supplemental excerpt of record at page 30, that show that USA Fanter sent its schedule of values with the 41.1%, and you have Mr. Wong responding saying there's no objection to those values, significantly to the perceived authority of Mr. Wong. When Mr. Wong responded to USA Fanter saying he had no objections to those values, he included his direct supervisor, MK Lee, that is an IPI executive that Mr. Zhu testified undisputedly has authority to bind IPI in all matters. So Mr. Wong copied Mr. Lee on that email. Mr. Lee did not respond, did not state objection to the 41.1%, did not respond otherwise. And we have after the fact, after all of those contemporaneous communications, Mr. Zhu, again, IPI's 30B-6 witness, testifying that MK Lee's silence on matters like that constitutes his approval. So even without getting to the expert issue and even without addressing whether Mr. Wong was formally identified as the IPI representative under the contract, and I'm happy to talk about that further, but you have the parties themselves, contemporaneous with the work being performed, agreeing to a percentage, and you have a person, Mr. MK Lee, with authority to bind IPI, providing by his silence approval of that amount. When and who first objected to the 41.1% figure? So IPI ultimately objected thereafter, saying that USA Fanter had overcharged for that work, but didn't make a specific objection to the 41.1% work completed figure, which is also why, Your Honor, there is nothing in the record, there is nothing offered by IPI's expert, Mr. Tsai, that really speaks to a percentage of work completed, right? He came at that analysis from a different perspective in terms of looking at only the unit quantities of materials, which, as we've laid out in our briefing, we think is an inappropriate, and as the district court also concluded, inappropriate way to evaluate the work completed under this project because of its lump sum nature. So Mr. Tsai's analysis there doesn't inform the percentage of work completed. Well, was the objection made when an invoice was put in, or I'm trying to figure out what triggered the objection. Right, so Mr. Wong initially responded no objections to the schedule of values. That then sort of triggered USA Fanter to formally submit that invoice for payment, that's what the email exchanges lay out as the parties sort of custom in this scenario. And so USA Fanter then submitted the invoice for payment, and it was at that point thereafter that there was an objection to the amount. So I will address further the expert testimony issue. I know the IPI seems to suggest that the district court treated both of the experts differently, and I would submit to the court that that simply isn't reflected in the record. What we have is we have two experts. We have USA Fanter's expert that was offered as an expert on industry custom. And I'll back up a moment. Because we have a contract that does not clearly delineate a way to calculate work completed, it is settled law that the court then looks to the party's practice, which we've discussed in terms of the negotiations between the party's representatives in reaching that 41.1% valuation, and industry practice. And so it's at that latter point that Mr. Robertson's expert testimony becomes relevant and is the only portion of his testimony that the court deemed relevant, which was to validate that the way that USA Fanter and IPI's representatives, on-site representatives, handled the matter in terms of evaluating progress of the project and reaching an agreement as to work completed was a proper methodology for determining work completed in the industry. And that was the extent of Mr. Robertson's testimony. And to be clear, Mr. Robertson was willing to provide an independent analysis and calculation of the work completed. And that is where the district court said that that testimony was not needed, was not necessary, and excluded that testimony. And really the district court's approach to IPI's expert is exactly the same. IPI's expert was not offered as an industry expert. IPI's expert was more of an on-the-ground IPI employee who had lots of history with actually other types of contracts, not necessarily lump-sum contracts. He testifies to that as well. And was essentially given the task of calculating unit quantities of completion and so used only the measurements and calculations of materials on the project, not including equipment or installation to reach evaluation. There was extensive testimony by Mr. Sy. He was on the stand for nearly an entire afternoon of the short four-day trial, during which time the judge provided multiple opportunities for IPI to explain and to provide a proffer for how Mr. Sy's testimony was relevant. In the course of doing so, IPI acknowledged that the calculation that Mr. Sy was reaching in it being limited to those unit quantities of materials was really not the full picture. IPI's counsel acknowledged that adjustments would need to be made to that figure to actually reflect work completed. And yet the expert was not able to, did not provide any of those adjustments to actually reach an opinion that provided a percentage of work completed that would rebut that which was already provided through the evidence. So ultimately, the court concluded that the testimony being provided by IPI's expert simply wasn't helpful to the analysis, because it was only one portion of what needed to be considered in evaluating how much of the work had been completed. Counsel? Yes, Your Honor. Did you want to finish on the expert? Because I wanted to go on to a different issue. That's fine, Your Honor. All right. So what is your position regarding whether or not IPI appointed a representative in accordance with the contract language? Right. So the contract says that IPI will, quote-unquote, identify a representative. It does not say how the representative is supposed to be identified. It does not require that identification to be in writing or to be in any particular form. So there's certainly some sense of ambiguity in terms of how that representative was to be identified. But there is no dispute in the record that Harry Wong was the IPI representative on site each and every day of the project. There was no one else on site at the project. So it necessarily had to be – I mean, either Mr. Wong is the representative for IPI in some form or fashion, or there's simply no representative at all, because there is no other alternative. IPI does not offer any alternative. Mr. Zhu, who testified as IPI's 30B6 witness, obviously after the fact of all of this, testified himself that he understood that Mr. Wong was the representative, that Mr. Wong was the one on site reviewing the progress, conferring with USA Fanter's representative as well, and then reaching that work-completed percentage. So at a minimum, which is what the district court concluded, at a minimum, through the course of the party's conduct, they certainly put Mr. Wong out as IPI's representative. And in so doing, we would submit identifying him as their representative under the contract. How long had they dealt with him? I know that the parties have had extensive history with each other, and I know that USA Fanter understood that Mr. Wong was frequently IPI's representative on projects, and they certainly had a reasonable working relationship during the course of this project in terms of the on-site management of the projects. How long had this project been in effect before the relationship broke down? Right. For that, not particularly long. The bid process started in May of 2019. Work on the project started in June of 2019, and by the end of September, early October, was when USA Fanter provided that last invoice that is now the subject of this mechanics. Thank you. And I will add that the breakdown was, certainly as the record reflects, not a breakdown between the representatives of the two companies, but due to the fact that IPI was not providing any payments as was to be scheduled according to the work progress under the contract. So what is the status of this now, just out of point of information? Right. So the matter is essentially still pending. There are potentially civil claims, breach of contract claims still at issue. So in some sense, the case is in a bit of limbo. This is obviously a significant portion of the case. It's a particularly meaningful portion of the case for USA Fanter. And so in large part, we are waiting for this resolution to see where things land. Did the work ever get done? So as the parties had negotiated under the contract, there were these four phases. I think they're not consecutively numbered. This mechanics lien is limited to work performed in Zone 1 of the project. There are a few other zones that are not at issue. Based on the schedule of values that is in the record as well, there was work completed on those other zones of the project that aren't subject to this mechanics lien. But the entire project was not completed. I would submit that the district court was proper in its conclusion that Mr. Wong was IPI's representative, at least in an ostensible fashion. And I would further submit that even if Mr. Wong was not IPI's representative for purposes of binding IPI based on the record that we have here with the communications from Mr. Wong that copy Mr. Lee, who indisputably has authority to bind IPI, that that communication between the parties was sufficient to bind IPI to the 41.1% work completion figure. Beyond that, the expert testimony by both parties really only helps to validate that the party's course of conduct in having their on-site representatives there to evaluate the work being performed and to reach agreement as to the percentage of work completed is appropriate industry custom. And all of the other evidence offered by the experts that the district court rejected was properly rejected given the direct and contemporaneous evidence from the parties as to the percentage of work completed. If there are no further questions, I will submit, Your Honors.  Thank you, Your Honor. Briefly, three or four points. With respect to the question on whether the expert witnesses were treated differently, which I believe my learned counsel suggests is not the case, I think the record suggests otherwise. The fact of the matter is that USA Fanter's expert was permitted to testify fully and completely, and IPI's expert only provided background testimony and was then cut off and not allowed to provide the full live testimony from which the district court could evaluate the very things that USA Fanter takes issue with. I would point to page 12 of the answering brief of USA Fanter in which USA Fanter says, USA Fanter sought to introduce Robertson's opinion confirming the accuracy of the 41.1% completion based on independent review. But the district court rejected that portion of his testimony because she could not verify what numbers his assistants were looking at or the software that was used to derivate that. So, in fact, Robertson testified or tried to regarding the accuracy of the percentage completion, and it was rejected simply because he didn't provide, he couldn't support the numbers or the software, quite in contrast to IPI's proffered witness. IPI had tendered a lay witness, which had taken on-site measurements, which the district court rejected, but that would have filled in this very gap that the district court cited. And second, IPI had provided an expert report and was prepared to have its witness testify as to the precise software he used in order to determine the percentage of completion. Council says that there's nothing in the record where the witness testified, that is, IPI's witness testified to the percentage of completion. If the court looks at the record carefully, it's precisely at the moment where he was asked, can you testify as to a percentage of completion? And he said yes, that the district court terminated his testimony. So, it's true in as far as it goes that he didn't, in fact, give a percentage, but it's because he wasn't allowed to testify, although he should have been, in that regard. I'll also point, yes. Council, do you take issue with opposing council's representation that your client's 30B6 witness said that Wong was the company's representative? I do, and I don't think that that's precisely what he said. What did he say? I don't have his testimony in front of me, but, Your Honor, to the extent that that's a legal question and he was a fact witness, I don't think that that's proper province for him in any case. I don't have his testimony in full in front of me. Why is that a legal question, who was the representative for the company? Isn't that a factual question? Well, because, well, the contract actually in two different places said IPI shall appoint a representative. And I believe USA Fanta throughout, including in its briefs, has indicated that it agrees that that never happened. And so, if IPI never designated a representative, then what we're talking about is whether one could be implied in law, which we take issue with one as a matter of contract interpretation. We don't believe it's permitted. But second, the question of implication under law I think is a legal question. Well, let me ask you this question. Do you agree that your 30B6 witness said that Mr. Lee had authority to bind the company? I believe Mr. Lee had authority to bind the company with respect to determining whether the company would pay, but I think that's a very different issue than the question of whether Mr. Lee, who was sitting in Hong Kong and I don't think had ever been to Saipan, much less to the site, could testify as to whether USA Fanta, who was on the site for a few months, had come to a particular percentage of completion. As counsel said, the most they could say is that Mr. Wong didn't object to the values and that Mr. Lee was silent. That's a far cry from what I believe is required, even under the most advantageous reading of this. All right. Thank you, counsel. Thank you to both counsel. We understand your position. The case just argued is submitted for decision by the court. That takes us to our final case for the day and the week.
judges: SCHROEDER, RAWLINSON, BRESS